Case number 207020 Christopher Chandler the appellant v. Donald Berlin et al. Mr. Oliveri for the appellants, Ms. Green for the appellees. Good morning, Mr. Oliveri, you may proceed. Good morning, your honors, and may it please the court. My name is Joe Oliveri and I represent the plaintiff appellant Christopher Chandler in this case. Your honors at the most basic level, this appeal arises from the district courts improper weighing of evidence on summary judgment that denied Mr Chandler his day in court to rebut false defamatory and highly damaging accusations made against him. In this case, Mr Chandler asserts two separate defamation claims, each based on a distinct publication of a dossier, which defendants authored and published to journalist and prolific author, Robert Erringer who's a third party to this case that falsely accused Mr Chandler of among other things, engagement in organized crime and espionage. The appeal presents a simple and straightforward question with regard to each of those two claims. Mr Chandler's first claim arises from the 2017 republication by Mr Erringer to the British media of the dossier that defendants authored and previously published only to him. The question before this court is whether the district court erred in granting summary judgment, based on its holding as a matter of law, that it was not reasonably foreseeable to defendants that Mr Erringer, who paid defendants to author and publish this defamatory dossier about Mr Chandler, who essentially hired defendants to produce an opposition research report on Mr Chandler, might subsequently share the allegations or repeat the allegations in that dossier. The court absolutely erred in that holding, both because it fundamentally misconstrued the law governing the foreseeability analysis, and also separately, because it failed to consider into credit on summary judgment evidence that courts have repeatedly held make republication of a libel reasonably foreseeable. Mr Chandler's second claim arises... You mentioned evidence that other courts have credited, and what evidence are you talking about that's relevant here? Yes, Your Honor. So the district court, in its opinion, did not consider the fact that Mr Chandler, or I'm sorry, that defendants here published their dossier to Mr Erringer, who is a journalist. You talk about evidence, but you never... I don't know if you represented Mr Chandler in the trial court, but there was no deposition of Mr Berlin to pin down actually what he did know. Is that right? That's right, Your Honor. The court granted only very limited discovery with regard to the second claim here about whether or not the discovery rule applied. But here, despite the lack of a deposition of Mr Berlin, there's still evidence in the record that, and let me go through a couple things. First, that Mr Erringer was a journalist and courts have commonsensically recognized, and defendants don't dispute that it's reasonably foreseeable that a journalist may republish defamatory statements that are made to them. And the only way we know, we're imputing knowledge to Mr Berlin about Mr Erringer's status as a journalist based on matters of public record, because you never sought a Rule 56D opportunity to depose Mr Berlin, right? It's correct that Mr Chandler Blow did not seek to depose Mr Berlin, but there is still evidence, both in the public record and also if you look at the statements of material facts submitted in conjunction with the summary judgment motion. In Mr Chandler's counterstatement of material facts, he stated that Mr Berlin and defendants did in fact know that Mr Erringer was a journalist, and defendants never objected to or disputed that fact on summary judgment. In addition, and tying directly into that, Your Honor, the record shows that defendants here have decades of experience in the research and investigation industry, and they know that their clients seek information from them to use that information. Defendants brag on their website, which again is in the summary judgment record, that their clients engage their services to obtain information in order to use it, whether it's through the performance of due diligence, compliance activities, and to pursue litigation. And it's reasonably foreseeable that clients using that information would necessarily share it. Clients don't pay Mr Berlin to produce reports just to get information to put it in a lockbox and seal it away. So that sounds like you think your claim suffices simply by Mr Erringer having shared the information with the Prince. Why isn't that the beginning and end of your claim? Well, I think that's exactly right as well, that there's a republication to the Prince as well, in addition to a republication to the British media years later. The fact of the matter is that under the reasonably foreseeability analysis, defendants need not have foreseen the precise injury that ultimately happens to the plaintiff or the particular method in which that harm occurs, as long as it was reasonably foreseeable that the allegations would be republished to somebody. And here, the record shows that defendants did have knowledge, or at least there is a fact question as to whether defendants had that knowledge or should have had that knowledge that the allegations in the dossier may be republished. If you look, also defendants submitted a declaration in this case in which they stated that they told Mr Erringer he needed to verify the information in the dossier before relying on that. And from that as well, it's reasonable to conclude that defendants were expressly contemplating that Mr Erringer may share the information. That seems like a stretch. I mean, they could, without tipping their hand about what they already had, they could take action to verify that information as a set of hypotheses without actually sharing the dossier. But just going back to the cases that you rely on, I have a few questions. It's striking how long the time is here between Berlin giving the dossier to Erringer and the British press getting it. Do you have any cases that support that long time lapse? I think your only case is the Cosby case, which is, is there anything else that supports a long time lag like that? Sure. Two points, Your Honor. Just very quickly, the first thing you mentioned about whether Erringer could verify the information without sharing it, that's absolutely true. It's a fact question that was resolved on summary judgment here. More directly to your more recent question there, with regard to the timing, I want to first emphasize that the key question here is whether it was foreseeable to the defendants that the libel might be republished. Foreseeability is measured at the time of the defendant's wrongdoing, not in hindsight. The district court here, as Your Honor recognized in her question, said that the most important reason for holding republication unforeseeable was that passage of 14 years. But future events cannot make foreseeability at an earlier date any more or less likely. To Your Honor's subsidiary question about the case law, there's the Green v. Cosby case, which found republication foreseeable after about nine or 10 years. And I'd also point to somewhat relatedly in Fitzgerald, which was a defamation adjacent case, there was a much claim was brought many years later. Here, however, again, the key fact with regard to the timing is that we have to assess reasonable foreseeability at the time that defendants originally published. True enough, but I don't, or accepting that as the case, It nonetheless is a question that bears on the objective reasonableness of foreseeability, whether someone in Mr. Berlin's position would forecast that this information will be shared so far in the future. It seems the further you get out, the more tenuous the objectively reasonable foreseeability becomes. So, and is that not correct? So the length of time is a factor, even under your view, that we assess from the time of the original transaction. Respectfully, no, Your Honor. In this case, I would submit that that's precisely the type of hindsight analysis that courts have eschewed. The converse applies as well. Had Mr. Erringer supplied, had Mr. Erringer republished the dossier for the allegations in the dossier six months later, that using that as an indicator of foreseeability and still engaging in a hindsight analysis, what we have to look at is the totality of the facts at a time of publication, the sensational nature of the allegations. We have the facts that defendants know that their clients often reuse or republish their work that they get from them. And we have Mr. Erringer's status as a journalist. These are all factors. But you point to Mr. Erringer's status as a journalist, but I don't believe it's disputed in the record that he went to ICI to get this information at this time because he wanted to get work with the Prince of Monaco, not as a journalist. And in fact, quite the contrary, as an intelligence consultant, and in that role, in that role, it would seem that it's very unlikely that Mr. Erringer would want to broadly publish the information. He would want to keep it on close hold and use it to impress the Prince that he had access to further information that would be useful to the Prince. And this is sort of where I think the projected timeframe comes in to the picture, because if Mr. Berlin is thinking, here's a guy who wants to be a confidential intelligence advisor to the Prince, it's not only not in his interest to republish this broadly, it's in his interest not to. Well, I think the answer to that, Your Honor, is that Mr. Erringer is wearing a couple hats here. He may be wearing the intelligence or wannabe intelligence operative hat. He's also a known journalist who was recently profiled by Salon magazine, just before he contracted the defendants to get this dossier. We can't assume for purposes of summary judgment here that he's taking his journalist hat off and putting it in his pocket for purposes of this transaction. There's no evidence of that and of course of summary judgment. But summary judgment is an evidentiary standard and your client also has a burden on that. There's no evidence that Berlin did know about Erringer's other hat. Well, respectfully, there is evidence that Mr. Berlin knew about Erringer's journalism hat here. Again, I would point, Your Honor, in the record to plaintiffs counter statement of material facts that was undisputed by defendants. And it's also, we would submit, reasonable to conclude that even absent that statement of that stated fact that was not disputed on summary judgment, defendants based on their knowledge and their experience in the research and investigation industry, surely who would have looked into Mr. Erringer before taking him on as a client to make sure that, as defendants say on their website, their services are contracted for permissible purposes under law. I want to pivot. I'm happy to answer more questions on that but because my time is very short. I also want to briefly address the second claim here. Let me, can I ask you, we'll have time so can I just ask a different, take a different angle on your 2017 theory, which is, you don't allege that Berlin, the defendant here, did anything wrong in 2017, correct? With regard to the republication, no. Right, so your theory, this theory we're talking about has to be linked back to the 2003 publication. And your theory has to be that the conduct that Berlin engaged in in 2003 approximately caused all of these damages in 2017 because notwithstanding the passage of all of these years, the republication was reasonably foreseeable. That's right, Your Honor, and to the point about the 14 years. But that only works if you're right on the point that you were about to come to, which is that the claim based on 2003 conduct never accrued over all those years because the discovery rule prevented it. That's true. And I want to make sure we're not conflating the claims. That's Mr. Chandler's second claim. To your point about the passage of time, Your Honor, we submit that because DC law under the, says that the foreseeability analysis, you do not have to foresee the precise injury or manner, as long as it was foreseeable to defendants that Ehringer might republish his dossier, whether it happened one, five, 10 or 14 years later, doesn't make a difference. And if you're using that to make a difference, you're engaging in a hindsight analysis that courts say is improper. But looking not in hindsight, I just want to probe a little bit more. You rely very heavily on these reporter source cases. And, you know, the relationship between Ehringer and Berlin was not that of a reporter and a source. So how can we even rely on those cases, given that what matters is what would be objectively reasonable for a person in Berlin's circumstance, knowing what he knew at the time in 2003. So probing that, Your Honor, and what is the factual question here? Is it reasonable that he might have foreseen Ehringer would republish this? He knew that Ehringer was a journalist who still, you know, again, I would submit it would be unreasonable to expect that a known journalist and prolific author would suddenly take off his journalist hat. Yes, he engaged defendants to get this information, whether it's, you know, as a source or as a paid source of information. Mr. Ehringer need not, I'm sorry, defendants need not know what to what end he was being engaged. They were being engaged to provide this information just that they know that this guy, Ehringer, you know, is looking for dirt, is known to be a journalist, is getting sensational allegations here. I would submit at least a fact question here, whether it was reasonably foreseeable that he may republish these allegations in the future. The district court held that no reasonable juror could find it reasonably foreseeable, and that's where we submit there's error. Ultimately, at the end of the day, Mr. Chandler may win or may lose, but it's not an issue that should have been decided here on summary judgment based on the mix of evidence in the record. How is it whether, is it your position that all Chandler needs to prove is that some future republication is foreseeable, not this time, place, manner? Yes. What's your best authority for that broader standard that the foreseeability could be pretty, pretty wide open? I'm putting this false information out in the world. I lack assurances that it's never going to leak out and harm this person and therefore it's a ticking time bomb forever? Is that the position? I think you have to look at the confluence of facts here. In terms of case law, I would direct your honors to DC v. Perez, the DC Court of Appeals, 1997, Psychiatric Institute of Washington, also the DC Court of Appeals, which cited this court's decision in Kendall from some years earlier. That governs the foreseeability analysis here. With regard to your honors ticking time bomb scenario, I think you have to look at the facts. So this isn't a case where a defendant told, say, someone in his employ some information where it would be very reasonable to expect that confidence would be kept. Here you're providing information to a third party who you know is a journalist. You know that you're providing explosive allegations that people have a tendency to repeat. And you know that you are being hired and paid to provide essentially oppo research on Mr. Chandler. And people pay money to get information like that, to use it, to share it. And it's reasonable that based on all the totality of the facts here, that Mr. Berlin could have foreseen reasonably that at some point this information may have been republished. Now your cases, your DC v. Perez and your Psychiatric Institute of Washington cases, those are not defamation or libel cases. Those are other kinds of tort cases. I don't know whether it's because of the First Amendment overtones, but it doesn't seem that the courts have been as generous with foreseeability where we're talking about information. Your Honor, I think there's a lack of case law out there because the facts here are admittedly pretty unique. It's not every day that someone hires a private investigator to get sensational allegations and then sits on it for a period of time like they did here. Admittedly, there's not a lot of case law out there, but the principles from Perez and Psychiatric Institute, the principles governing the foreseeability analysis apply in full force. And Mr. Berlin argues, sorry to interrupt, but Mr. Berlin argues that allegations in defamation cases are always explosive. So on your framing, there would always be foreseeability. Basically, cause is there once the information is set loose. I want to make it clear there. So defamatory statements, as Mr. Berlin explains in his brief, are always discreditable statements. They're always statements that are going to hurt someone in their reputation. That said, there are degrees there, and there is a huge difference between explosive allegations of Russian espionage, of organized crime, and massive money laundering schemes versus the statement that John Smith stole an apple from his teacher. So all of those are discreditable statements, but certainly the allegations of espionage that are also newsworthy explosive allegations are of a different order of magnitude than those other discreditable statements. So the exception doesn't swallow the rule here. I'm also, we haven't really talked about the tolling issue that much separately, but on the one hand, you're willing to attribute a lot of information that was public to Mr. Berlin, but it seems less so when it comes to imputing knowledge to put Mr. Chandler on inquiry notice. Why isn't it the case, as the district court held, that Erringer's various republications, 2009, 15, 16, were enough to cause a reasonably diligent target of these, as you say, defamatory and extraordinary statements to make inquiry and find out what their punitive source was? Your Honor's question presents two related issues. One, the inquiry notice point, whether the 2009 lawsuit or 2014 book put Mr. Chandler on inquiry notice, and then if he were on inquiry notice, whether through the exercise of reasonable diligence, he would have discovered defendants publication of the dossier. Taking those in turn, Your Honor, if we look at the 2009 lawsuit, the district court said, and defendants, the only reason they argued that put Mr. Chandler on inquiry notice is because it said that Erringer investigated Mr. Chandler and has documents on that matter. Well, the complaint itself does not mention defendants, doesn't mention the dossier, doesn't mention Erringer working with anyone at all, and in fact, Erringer claims complete credit for that investigation of Mr. Chandler. He says Erringer intensively investigated it. There's no reason to suspect that even if Mr. Erringer has documents, they would reveal defendants dossier or defendant. How about the later ones where Chandler is on record sort of taking a pass, like I'm going to just weather these, I'm not going to find out more, these are foolish. And that goes to the book and the blog post, which again, don't mention defendants, don't mention the dossier. Mr. Erringer, or I'm sorry, Mr. Chandler, perhaps could have decided to sue Mr. Erringer there, however he chose not to, which is his right. And as this court recognized in its Liberty Lobby decision, Mr. Erringer previously has been a source of scurrilous allegations, so it may well have been Mr. Chandler decided not to sue Mr. Erringer because he didn't want to lend credibility to Mr. Erringer's outlandish claims. I'm not sure whether it makes a difference legally, but I'm just curious why that changes in 2017. If Erringer is still the source of the information that's going to the MPs and to the British press, why does it seem more, why would Mr. Chandler change his mind then? So I don't think legally it makes a difference, and I hesitate to speculate on the record here, Your Honors, but I think it would be reasonable that come 2017, when Mr. Erringer republishes this dossier, the allegations in the dossier to the British media, and it creates a firestorm where British Parliament was investigating Mr. Chandler, they ultimately found he was an innocent man, of course. But at that point, it wasn't just some book self-published on Mr. Erringer's website, it was allegations that, false allegations that are gaining traction, and it compelled Mr. Chandler to step up at that point. I don't want to leave unanswered, Your Honor, a second question about the reasonable diligence. If he were on inquiry notice, which again, I don't think I would submit that the lawsuit and the book do not put Mr. Chandler on inquiry notice, but even if it did, the court's only holding on this point in defendant's argument was that if Mr. Chandler had sued Mr. Erringer, he would have discovered the dossier. Okay, there's two faults with that. First, that the district court's holding goes against settled law saying that reasonable diligence does not require a person to commence a lawsuit in order to procure discovery of unknown facts. Defendants don't dispute any of that. And I think the one case that defendant's side is holding otherwise, the Bryn case, says that with some evidence of wrongdoing. So, i.e., the defendant already knows his cause of action, and you're in a Chappelle situation, which is unlike that here. Secondly, though, even if Mr. Chandler had sued Mr. Erringer, there's no guarantee that he would have obtained discovery, and that discovery would have shown defendant's connection to the dossier. He would have had to have overcome a motion to dismiss, Erringer would have actually had to have participated in the lawsuit, and Erringer would have still needed to have docs linking the defendants. That's all speculative, as defendants point out in their brief, and I think that's exactly the point. We just don't know, in the court held as a matter of law, that Mr. Chandler would have found all those facts. I know my time's expired. I don't want to belabor the point and take up the court's time. Happy to answer any other questions that your honors would have, though. All right, even though we've consumed your time with questions, we will give you two minutes for rebuttal after Mr. Dean has had an opportunity to argue. Good morning, Mr. Dean. You may proceed when ready. Oh, you're muted still, Mr. Dean. I'm sorry. That was my best argument, too. May it please the court, John Dean representing Mr. Berlin and the ICI companies. I want to provide a minute of context to the allegations that have been made against Mr. Berlin. I'd like the court to consider Mr. Chandler's position in 2018 when he finally gets his hands on the documents that the press has been writing about. He gets those documents and he knows Erringer is the author of one of those documents. Erringer is the person who gave those documents to the press. He knows that Erringer has been saying this stuff about him for years, starting all the way back in 2009. Because Erringer gave those documents to somebody in Great Britain, it's likely that he can sue Erringer in Great Britain where the defamation laws are a lot more favorable to plaintiffs than they are in the U.S. And what does he do? He doesn't take any action against Erringer. Instead, he embarks on what Plaintiff's Reply Brief calls an extraordinary effort to discover the author of another document. He learns that Mr. Berlin is the author. Mr. Berlin, a small businessman who delivered a report to Erringer in 2003, gave that report to nobody else. And in fact, nobody else ever got a copy of that report until 2017, according to paragraph 11 of the complaint. The Prince never got it. Nobody got it, according to Mr. Chandler's complaint. And Mr. Berlin has made no public comments about Mr. Chandler, whatever. Mr. Chandler, however, chooses Mr. Berlin as his target to combat this firestorm that now has erupted. And he's got to sue Mr. Berlin in the U.S., where the law is a lot less favorable. I submit, Your Honors, that these are not the actions of a wrong philanthropist who's seeking a full and fair day in court to restore his reputation, which has been sullied over and over and over again by Erringer. I think it is more likely an effort to try and extract a concession from Mr. Berlin, and in the hope that he can use that in his public relations campaign. Well, to be sure. I mean, we have to assume, because the merits have yet to be litigated, that Mr. Berlin has proffered false information. And, you know, you may not accept that, but you have to provisionally accept that in the current posture. So if Mr. Berlin has been the engine behind Mr. Erringer's subsequent dining out on the information, if the source is Mr. Berlin, then the question is, why does this passage of time matter? If somebody told somebody else in, you know, 1965 that my great-grandfather was a Nazi, and it didn't come out until I was, you know, nominated to be a judge, but then it becomes something all over the news, why would it matter that there was a long passage of time? If that information was false when communicated, and because of its character and the circumstances of its having been generated, made it objectively foreseeable that it would see the light of day, and it would be very damaging to the reputation of its target at a later time. Why does that matter? I think it matters in this respect, and obviously, Your Honor, we completely agree that for purposes of the motions we made, we have to assume the truth of the allegations about Mr. Berlin, even though if Mr. Berlin is forced to defend himself, he will, and will be taken care of at that point. But this is a republication case, and a republication... In part, in part, in part it's a tolling case. Right, fair enough. Talking about 2017, it's a republication case. And as far as 2017 goes, the law is that Erringer, who republished the limited report, is absolutely liable for it, and he can be sued with no problem at all. You focused on that in your opening, and I just don't see how that gets you anywhere other than as a sort of fairness and equities argument. It's legally irrelevant whether Mr. Chandler chose not to sue Mr. Erringer. Well, it's certainly relevant when we get to the tolling, Your Honor, and I'll put that aside. And the inquiry notice. Okay, but I'm not sure that you're using your time in the most relevant way by focusing on that. I mean, I had pretty much used all the time that I was going to use on that point, because the foreseeability argument with respect to 2017, there's a fundamental difference between the parties here as to what the actual standard is. We say that the standard is the very republication that is the source of the plaintiff's defamation claim must have been reasonably foreseeable to the defendant. How, how much, because I thought you were pulling away from that after Mr. Oliveri's brief said it can't be that it's, you know, this particular publication in this particular place and these particular time. It can't be that narrow and the case law doesn't so suggest. So the question whether somewhere far down the road, this false information that is quite defamatory will see the light of day. Yeah, it's relevant that it's far down the road but but does it have to be, you know, in Britain as of the time of the Brexit controversy. Oh no, absolutely not. You know, I mean if you have, you said the very republication at issue would have to be for foreseeing would have would have to be reasonably foreseeable, but reasonably is an important qualifier in that and we certainly don't dispute that at all. In other words, the question is, looking in 2003, and we don't deny the 2003 is the time when you look at this, looking in 2003. Can you envision circumstances in which this report will be republished. And sure, I mean we don't expect him to sit down there and say, yes, in Britain in 2017 there'll be something called Brexit and ask him, do you foresee that the answer is obviously going to be no, but the point is this the case law all says that the republication must be reasonably foreseeable. Mr Chandler's position is, if there's any, it's the ticking time bomb position. If any republication at all is foreseeable than any republication is foreseeable, and that that can't be the law, because, well, because number one the cases don't say so. The cases say the very republication. No, they don't. Well, Oprah, what's your best case for the very republication. Well, all the cases I'd say Oprah in burn tabloid is tabloid is says such republication in burn Oprah will say the repetition or the republication and the restatement says that as well and that definite article means something. What it means is, what are the circumstances, I mean, let's, let me say this so there's no confusion here in their reply brief, the standard that they offer from Psychiatric Institute of Washington is, you don't have to foresee the precise injury, but what you do have to look at is, is the possibility of harm clear to the ordinary prudent. And we'll take that. We don't have a problem with that as a standard. So what's the question the reasonable foreseeability question that we see is this was in 2003. Was it clear to the ordinary prudent I that this report, given to one person, and one person only marked confidential would somehow not be published by Erringer as a journalist, but be given by Erringer as a source to the press. Years later, in a foreign country in a country that has no relationship whatsoever to the events that are described in that report. And the only reason it goes to the press in that country is because what's in there is now newsworthy because of two events. Mr Chandler's think tank, and the Brexit controversy that were totally unanticipated in that country. Years ago, it could be anticipated that a well to do business person would be harmed by these kinds of claims in a report that Mr Berlin wrote coming to light. It might be but the point is not is is the harm to Mr Chandler foreseeable. The question is, is the republication foreseeable Mr Chandler at that time has no connection to Great Britain at all. So a republication. What if, what if what was foreseeable was that it would be published to Media At some point down the road. I mean, I, I have to say that that it depends on the nature of the foreseeability and the particular reason here. Isn't Mr Berlin liable if it's if it's given to anyone, including the prince. He only if it's reasonably foreseeable that It wasn't reasonably foreseeable that it would be given to the prince. It's, it's possible, although Not reasonably foreseeable. Well, no, because of the circumstance that he informed and this is undisputed he informed Arringer look this is information that I've gotten from databases. You've got to go and you've got to verify this. You've got to check and see if it's correct. Before you rely on it. So I don't think that that's necessarily foreseeable, but even if it is the fact of the matter is that giving it to the press. Many years later is not foreseeable, particularly because of their allegation that what this is is a pitch. Now that's what they called it in the complaint. It's not a word that we've heard very much in this court, but that they have said is it's a business proposal. It's a confidential business proposal. It's a business proposal, which the very term pitch. I, I would think would work against the point you were just making, which is That Perhaps the understanding was that Arringer was supposed to validate before he relied on, let's say in having the prince take action against Chandler, but as a pitch as a teaser. He was it not objectively reasonable to anticipate that Arringer would share it with the prince. Yeah, if in fact it was. And just to make clear, we don't at all concede that it was a pitch, but we're assuming that for the purposes of of our motion. But it might have been foreseeable that it would go to the prince, but it's certainly not foreseeable. It's going to be published in the newspaper. If you're saying to the prince, I've got some really good information that you need to pay so that we can look into You know, how much is he going to pay if he can pick up his newspaper and read it and moreover publication of it 14 years later. At a time when Arringer is no longer working for the prince at a time when Chandler is no longer living in Monaco. And when there is absolutely in 2003 no indication that anybody in Great Britain would care about this one way or another takes it way beyond the realm of reasonable foreseeability. Timing is an important issue here as the cases that the district court cited a poll the Gracie case from New York says three years. Is is too much H&V Associates says five years and so forth. The district court teed up the issue of there's no case that ever talks about Reasonable foreseeability for this long a period. And the only case that they could come back with to refute that is the Cosby case, which is a very, very different circumstance because in that case. The defamatory statement was intended to be released. If those charges ever were made. Well, nine years later, repeated, excuse me, nine years later, those charges were repeated the statement was used for its intended purpose. That's light years away from this. Nobody suggests that giving this report to the press in Britain has anything to do with encouraging Prince Albert to pay more money for investigations. That's not going to happen, no matter what. The The issue of erringer's journalism has erringer lost his journalism had a long time before 2003 all of the information that they talked about. Oh, by the way, their counter statement of material facts. Rule seven of the district courts rule says we as the movement put forth a statement of material facts and anything that they don't refute Is admitted. There's nothing at all about a counter statement of material facts and no obligation under the rules for us to respond to those facts. But putting that aside for the moment erringer's hat was off in the 1980s sometime The The salon article, which of course was not a profile of erringer the journalist. It was a profile of of erringer the spy trying to prevent publication of a book. And there are references to one magazine article that he wrote in the 80s of a book or two that he wrote in the 80s and some novels. There's nothing about that that suggests that he is a journalist and he wasn't he was an actual intelligence agent. He started working for the Princeton 2002 and work for him. Through 2008 that's what is verified complaint says, which, by the way, was Mr Chandler's exhibit on summary judgment, they put the whole In terms of reasonably foreseeable somebody who spent most of his professional life as a writer and is trying to launch into presumably more remunerative Field, but that's a tenuous prospect and presumably if he doesn't succeed or succeeds only temporarily he'll be thrown back on his primary mode of earning a living, which is writing and he could isn't it foreseeable that he would then repurpose anything that might get broad public attention. Once that hat is, you know, just to take your formulation. Once he's wearing his journalism hat again. Well, and then so that so the time lag might well be foreseeable in that in that state of affairs and that he would use that information when and if he could to his advantage. I have two responses, Your Honor. One is, I would dispute the premise that Aaron just spent most of his life as a journalist. If you look back in 2003 Arranger had worked for 10 years for the FBI doing counterintelligence, according to his book, which again is Mr Chandler's exhibit on summary judgment, all of the journalism. References and they are pretty sparse referred to the 80s and the early 80s that he wrote a book and a book or two in 1980 he had been a novelist, he did. It might be helpful to focus a little bit on the on the tolling argument. It seems like your argument for inquiry notice turns on references to we and to documents. I'm not sure I follow that given that if if Erringer is having people, you know, stake out sovereign plaza or go down to the police station to get records that could be a we doesn't suggest that there's any other kind of, you know, Center of power out there. Nor does the existence of documents suggest anything other than perhaps Public record documents. So, so am I wrong that that your position depends critically on those references to we and to documents alerting Mr Chandler to the possibility of another actor. It depends. For the Chappelle case if we proceed proceed under the Chappelle case, the primary Reference that we depend upon is the reference to documents. If we proceed on Fitzgerald. We don't need that at all. But as to Chappelle what he says is, I have documents to support my charges. Well, you know, documents obviously don't create themselves. Somebody had to create those documents. Once Erringer says he has the documents that imposes a duty to investigate Diamond V Davis says you have a duty to investigate your affairs and sure Erringer says I have documents. Maybe they're public records. Maybe there's something else, but you can't sit back and rely on the maybes because under Chappelle what you know if you know that There are documents supporting Erringer's charges. Somebody created them. You have a cause of action against that somebody and you got to find out who that somebody is. It's a duty to investigate. You can't just sit back and say, maybe this, maybe that maybe the other thing. To investigate and to show that had he investigated, he would have found out That's correct. That's correct. And for that we for that Chappelle and Fitzgerald both say in the very narrow circumstance, what we're dealing with here, which is, you know, you have a cause of action against one person. How does your knowledge of that cause of action against defendant number one influence your cause of action against defendant number two and in that narrow circumstance, both Chappelle and Fitzgerald say You've got to file the lawsuit. The cases that they rely on Baskin and Locke are both from other jurisdictions and moreover, they are not defendant number one versus defendant number two cases. Do you have any other questions. I just have one about how the two parts of the case fit together. So assume that the republication was was reasonably foreseeable. Just unfavorable to you, but also assume which is favorable to you that Chandler was on inquiry notice as to Berlin's conduct in 2003 Do you get an outright dismissal on those two assumptions or not. I, um, I think we might. I guess the hesitancy that I that I would have is, I mean, the republication rule does say that if there's a reasonably foreseeable republication, you're, you're liable for it. The complication here, I guess, is that he had an opportunity earlier on to sue for it and he forfeited that opportunity or yeah he forfeited that opportunity by not doing so. And Whether I could have had an opportunity. Had he Investigated promptly. Had he investigated. Yes, he he he for I well he I guess he forfeited the opportunity to investigate and therefore the statute of limitations ran. I'm what I'm struggling with, I guess, Judge Katz says, I'm not sure. Just in the real world, how it would work out if he had sued earlier and the statute of limitations and run, you know, after this Whole case, then we're finished. If someone then just went and republished it again. I'm not sure how those two would would would interact. I mean, the reason The reason I ask is there are some cases that say it seemed to say the republication rule is a principle of damages. And there are other cases that seem to say that a republic, the mere republication By a different party doesn't create a new cause of action. Yeah, I think that the the crazy case in New York certainly seems to suggest that I think that and it may be that that New York in certain instances doesn't follow. Every Jot and tittle of the of the restatement. I think under the restatement. I think it's it's a principle of substantive law that is you are liable for a Republication if that republication was reasonably foreseeable. My understanding of it is that it's a at least in the District of Columbia, which follows the restatement that that's a principle of substantive law and not a principle of damages. Okay. All right. Thank you, Mr. Dean. Jerry, we have told you, we would gift you back two minutes for rebuttal. Thank you, Your Honor. To begin with, where Judge Katz has left off. It would not be a full dismissal under DC law which follows the restatement as stated by this court in Djankovic a republication is a new publication which causes which gives rise to a new cause of action so I thought Djankovic said exactly the opposite, which is that it's Your Honor, my, my understanding is that Djankovic and the four case all harken back to the restatement, where it says each communication of even the same defamatory matter, whether by the same defamer or someone else gives rise to a separate and distinct publication, which causes separate harm. If you have a separate publication and a separate harm, you could have a separate cause of action. And if the original publisher had nothing to do with That's correct. As long as it was reasonably foreseeable that it would be republished. And even if, and even if a claim on the original publication would be time barred. That's absolutely right. I think that the situation that you see republication come up the most is where a claim based on an original publication is time barred. And then the question that's litigated is, is the subsequent publication a republication or just part and parcel of the first I want to mention Chappelle, Mr. Dean Brought up the state of Chappelle. In that case, the court made clear that the plaintiff does not allege that defendant concealed the existence of a cause of action. Just their identities and the concealment of the defendants identity does not toll the statute of limitations. Here we have the alleged concealment of the entire cause of action, the publication of the dossier by defendants, it would be as if The defendants in Chappelle concealed the car accident, rather than just the defendants identity. So I just want to make sure that we keep Chappelle and Fitzgerald separate and distinct and aren't aren't conflating those two With regard to this. And you're saying this is not Chappelle because in Chappelle, it was known that there was an actor and just the identity of the actor was And here it's just not even clear there is an actor at all. Correct. And even more so in Chappelle, you knew that there was an injury, the decedent's death. You knew the cause. In fact, the car accident and you knew evidence of wrongdoing alleged negligent driving. You just didn't know the name of the driver here. Mr. Chandler did not know of the publication of the dossier, the cause. In fact, it is injury, which was harm to reputation or defendants role in that which is evidence of wrongdoing. What about Mr. Dean's effort to analogize this to Fitzgerald in the sense of like an employer employee relationship versus a contractor Contractee relationship. How really different is that, why shouldn't we assimilate this to the military subordinates rather than the White House Independent Power Center. Sure. Two reasons. One, in those cases, there was also the people who are responsible for the same harm and even the district court acknowledge here we're looking at two different harms. The harm from the original publication and then the harm from the subsequent publication, but even more so, there's no evidence here that defendants and Erringer had any relationship whatsoever. In fact, defendants disclaim that they say in their declaration, the only work that they they worked on together is that defendants contracted with or Erringer contracted with defendants to publish her to put together this dossier. There's no ongoing relationship. They weren't members of the same group or same organization or same industry, you're looking at People analogizing to the Air Force and the White House defendant. On the other hand, the only commonality that Mr Erringer and defendant had was that they both conspired essentially to Or both cause torches harm to Mr Chandler and the court in Fitzgerald, and this court also in Hobson and Richards said that's not enough. Otherwise, if simply being joint court feasors or causing torches harm to the same person were enough, then the Fitzgerald's claim would have accrued against the White House defendant. I'm a little curious, Mr O'Leary, this is circling back to something we talked about earlier. You seem to see the disclaimer of the veracity of the information in the ICI report as beneficial to you because it suggests, in your view, that the report would be shared with others in the course of verifying it And you heard my question before, which was implying that you don't need to show the basis of your hypothesis in the course of verifying. In fact, it's often more effective not to And I'm not sure why Mr Dean hasn't relied on it more. But if I give information and maybe this is just a merits question, but if I give information to someone and say I heard this, it may be completely false. But, you know, here it is, you may want to follow up. How could I possibly be liable for defamation arising from that information? Well, two things. First, I think you're exactly right. This is a merits question. This is a fact question. Which way does this disclaimer cut? I think it's reasonable. I certainly think my position is reasonable. Maybe Mr. Dean's position is as well. But that becomes a question for the fact finder. And second, I think your second question about liability would go to the specifics of the republication. If it were a situation where, or even if it were a situation where someone said, I heard this, I think this might be true. It may not. I think there's a closer call there than when someone republishes the material as fact to the British media. But there, that goes to the merits of the defamation claim, not the question of whether publication is reasonably foreseeable. There's an obvious publication element satisfaction there. The question becomes, is it defamatory as a matter of law? Was it published with the right element of fault? And those are just merits questions. And one last point, if I may, very quickly. Very quickly. The question of we and our investigation could very well have referred to Mr. Erringer and Prince Albert, our investigation, or Mr. Erringer and his self-described Monaco Intelligence Service. Certainly, those are reasonable constructions. And I would submit even more reasonable, even though that's not the standard, than defendants' involvement here. Or it seems to me even more effective for you, his administrative assistant or his research. That's absolutely true. That's absolutely as true as well, Judge Pillard. And I thank you for your time there. Thank you both. The case is submitted.
judges: Garland, Pillard, Katsas